```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                    HOUSTON DIVISION
```

UNITED STATES OF AMERICA, §
§
v. § CRIMINAL NO. H-10-201-3S
§
CHARLES DAVIDSON, §
CHRISTOPHER TIESMAN §
KENNETH GINES, JR., §
HASKELL "BUDDY" ROSS, and §
WENDY MUDRA, §
§
    Defendants. §

**ORDER**

Pending before the court[1] is Defendants' Joint Motion to Take Deposition of Edgar Vargas-Sanchez ("Vargas-Sanchez")(Docket Entry No. 238), Material Witness Vargas-Sanchez's Motion for Release (Docket Entry No. 240) and Defendants' Joint Motion for an Order Compelling the Testimony of Vargas-Sanchez (Docket Entry No. 255).

Defendants are managerial employees of IFCO Systems North America, Inc., ("IFCO"), a pallet management company with numerous locations across the United States. IFCO is headquartered in Houston, Texas. Defendants are charged in a two-count indictment with conspiracy to harbor and/or encourage and induce illegal aliens to come to or reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) as well as conspiracy to defraud the United States by causing to be filed false tax forms and other payroll-related filings in violation of 18 U.S.C. § 371.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). See Order, Docket Entry No. 244.

This action was initiated as a result of raids at nearly fifty IFCO facilities around the country in 2006, resulting in the arrest and deportation of approximately 1,200 illegal aliens. The United States has designated at least nine illegal aliens as witnesses.

In May 2010, the United States notified defense counsel that a former IFCO employee, Vargas-Sanchez, had been arrested and would be deported unless Defendants obtained a material witness warrant. Two defense attorneys, Christopher Tritico ("Tritico") and Ron Rainey ("Rainey"), traveled to St. Louis, Missouri, to interview Vargas-Sanchez.

Vargas-Sanchez voluntarily spoke with Tritico and Rainey. According to Tritico, Vargas-Sanchez admitted he was in the United States illegally and that he knowingly used a false identification in connection with his employment at IFCO. Importantly for Defendants, Vargas-Sanchez would testify that none of the Defendants assisted his illegal entry into the United States, provided him with false identification or encouraged his employment at IFCO. Vargas-Sanchez also would testify that his immediate supervisor knew he was illegally in the United States but that he could not say from personal knowledge that Defendants knew of his illegal status. Finally, Vargas-Sanchez would testify that he successfully used the same false identification provided to IFCO with other employers. Based on this interview, Defendants filed a

joint motion to take the deposition of Vargas-Sanchez.[2]  They also moved that he be granted release from custody and provided the same privileges as those afforded to the government's similarly-situated witnesses, such as immunity from prosecution and work-related authorizations.[3]

Vargas-Sanchez was denominated a material witness and transferred to Houston, Texas, where he remains in custody based on his lack of legal status in the United States.[4]  Through his court-appointed counsel, Vargas-Sanchez advised that he would assert his Fifth Amendment privilege to further questioning related to his employment at IFCO.[5]  Vargas-Sanchez also sought his immediate release and deportation to Honduras.[6]

It is well-established that a blanket assertion of the privilege against self-incrimination is not acceptable.  <u>United States v. Goodwin</u>, 625 F.2d 693, 701 (5th Cir. 1980); <u>see also</u> <u>United States v. Melchor Moreno</u>, 536 F.2d 1042, 1049 (5th Cir. 1976)(the court must make a particularized inquiry into whether assertion of the privilege is well-founded).  Accordingly, the

---

[2] <u>See</u> Defendants' Joint Motion for Equal Treatment of Material Witnesses and to Depose Material Witness Edgar Vargas-Sanchez, Docket Entry No. 238.

[3] <u>Id.</u>

[4] <u>See</u> Motion Hearing Entry, Docket Entry No. 205.

[5] <u>See</u> Motion to Release Material Witness, Docket Entry No. 240, p. 2.

[6] <u>Id.</u>

court ordered that Vargas-Sanchez's deposition be taken to obtain a record of the questions to which he would assert his privilege against self-incrimination.  The deposition was held on August 16, 2010.

Defendants argue that Vargas-Sanchez properly asserted his Fifth Amendment privilege to numerous questions that, if answered truthfully, would provide materially exculpatory evidence for Defendants.  Defendants thus seek an order compelling the United States to immunize Vargas-Sanchez.

The court first turns to whether Vargas-Sanchez has a colorable Fifth Amendment privilege to the questions posited during the deposition.

Vargas-Sanchez refused to answer questions about the origin of documents or identification he used to obtain employment with IFCO or other employers, refused to identify documents that he may have presented to his employers to show his eligibility for employment, refused to identify his signature on documents presented to IFCO and other employers, and refused to discuss the contents of what purported to be a W-4 form completed in connection with his employment at IFCO.  Vargas-Sanchez also refused to discuss whether he disclosed his illegal status to anyone at IFCO.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.  Thus, a person may legitimately refuse to

4

answer questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in a future criminal proceeding. See Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).

It is illegal to knowingly use a means of identification of another person. See 18 U.S.C. § 1028(a)(1). It is illegal to use or attempt to use any document prescribed by statute or regulation as evidence of authorized employment in the United States. See 18 U.S.C. § 1546(a). It is illegal for any person to use an identification document that was not issued lawfully for the use of the possessor, to use an identification document knowing it to be false, or to make a false attestation for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act. See 18 U.S.C. § 1546(b). It is illegal to use the social security number of another person to obtain something of value from another person. See 42 U.S.C. § 408(a)(7)(B). It is illegal to make a false statement on a tax withholding form. See 26 U.S.C. § 7205. Finally, it is illegal to make a false statement under penalty of perjury on a tax form. See 26 U.S.C. § 7206(1). Thus, the court finds that Vargas-Sanchez properly invoked his Fifth Amendment privilege in relation to his use of a social security number other than his own, his use of certain documents provided to any employer and his filling out employment-related tax forms.

The court further finds that Vargas-Sanchez properly invoked

his Fifth Amendment privilege with respect to documents possibly used to obtain employment outside the applicable limitations period. The shortest applicable statute of limitations for the above-listed offenses is five years pursuant to 18 U.S.C. § 3282(a). Even if limitations might bar prosecution for use of false documents that occurred over five years ago, if Vargas-Sanchez used the same documents within the limitations period to obtain employment at IFCO or with more recent employers, such an admission could trigger jeopardy for which Vargas-Sanchez may legitimately assert his Fifth Amendment privilege.

Having concluded that Vargas-Sanchez properly invoked his Fifth Amendment privilege, the court turns to whether due process requires the court to immunize Vargas-Sanchez as urged by Defendants.

In <u>United States v. Thevis</u>, 665 F.2d 616, 639 (5th Cir. 1982), the Fifth Circuit held that district courts may not grant use immunity to defense witnesses merely because that witness had essential exculpatory information unavailable from other sources. The court explained:

> An immunity decision . . . would require a trial judge, in order to properly assess the possible harm to public interests of an immunity grant, to examine pre-trial all the facts and circumstances surrounding the government's investigation of the case. Such collateral inquiries would necessitate a significant expenditure of judicial energy, possibly to the detriment of the judicial process overall, and would risk jeopardizing the impartiality and objectivity of the judge at trial.

Id. at 640.  The Thevis court considered, and rejected, the Third Circuit's approach in Virgin Islands v. Smith, 615 F.2d 964 (3rd Cir. 1980).  There, the Third Circuit had found that, based on the defendant's Sixth Amendment right to present witnesses, a district court may grant use immunity when the proffered testimony was both essential and clearly exculpatory and where no strong governmental interests weighed against an immunity grant.  Smith, 615 F.2d at 969.

In a later case, the Fifth Circuit again rejected a Sixth Amendment basis for a court's authority to immunize a defense witness.  United States v. Chagra, 669 F.2d 241 (5th Cir. Unit B 1982), abrogated in part on other grounds by Garrett v. United States, 471 U.S. 773 (1985).  In Chagra, the court reaffirmed its prior holdings that a district court did not have the "statutory, common law or inherent authority either to grant use immunity to a defense witness over the government's objection or to order the government to do so."  Chagra, 669 F.2d at 258.  The court also rejected both the Due Process Clause of the Fifth Amendment and the Compulsory Process Clause of the Sixth Amendment as bases for court-ordered defense witness immunity.  Chagra, 669 F.2d at 259-60.  However, the Fifth Circuit in Chagra left open the possibility that a court may have the inherent authority to grant use immunity to a defense witness in an "extraordinary" circumstance or where the remedial action was required to protect the defendant's right

to a fair trial.  Chagra, 669 F.2d at 258.

In United States v. Bustamante, 45 F.3d 933, 943 (5th Cir. 1995), the court stated that, "unless the government has abused its immunity power, a defendant has no due process right to have the trial court immunize defense witnesses."  Reaffirming its earlier rulings in Chagra and Thevis, the court found that a defendant has grounds to complain about the government's refusal to grant a witness immunity only "when the government is using its immunity privilege to unfairly skew the facts presented to the jury, thereby breaching the defendant's right to due process."  Bustamante, 45 F.3d at 943.

The court was unable to locate a decision within the Fifth Circuit where a court found that the government used its immunity privilege to unfairly skew the fact-finding process or where due process or other extraordinary circumstances required the court to grant use immunity to a defense witness.  With that in mind, the court turns to the facts in this case.

Here, Defendants have presented evidence that Vargas-Sanchez has exculpatory evidence which would aid in their defense. Notably, it has not been suggested that Vargas-Sanchez offers testimony that will directly contradict any government witness on any fact that pertains to Vargas-Sanchez's activities at IFCO. And, even if immunized, Vargas-Sanchez could only testify that Defendants were not aware of *his* illegal status, did not assist *him*

8

in obtaining housing or transportation to work, and were not aware of the falsity of *his* employment documentation. While that testimony is somewhat mitigating, it would not directly refute evidence that might show that Defendants were aware that other IFCO employees were illegally in the United States and working at IFCO using false documents. Thus, the absence of Vargas-Sanchez's testimony would not skew the fact-finding process of the jury.

Likewise, testimony that Vargas-Sanchez presented the same false identification successfully to other employers as he did at IFCO may be somewhat exculpatory but not so critical that the failure to offer such testimony renders the trial fundamentally unfair or distorts the fact-finding process.[7]

Finally, the fact that the government has immunized approximately ten government witnesses while refusing to immunize one defense witness is not so extraordinary to require the court's intervention. In United States v. Garcia Abrego, 141 F.3d 142, 152 (5th Cir. 1998), the court rejected a similar argument that the government's grant of immunity to a significant number of its witnesses violated the defendant's due process rights. The court stated, "[I]t is up to the jury to evaluate the credibility of a

---

[7] In their motion, Defendants argue that approximately seven hundred illegal aliens told the government that Defendants had neither hired nor assisted them in any way and that they had never told Defendants that they were illegally in the United States. See Defendants' Joint Motion for an Order Compelling the Testimony of Edgar Vargas-Sanchez, Docket Entry No. 255, p. 7. Assuming that representation is true, it would not directly contradict evidence that Defendants assisted other employees knowing that they had no legal status in the United States.

compensated witness" in light of the inducements offered to the witness.  Id. at 152 (internal quotations and citations omitted).

Defendants have failed to meet their burden that the government's refusal to immunize Vargas-Sanchez will so skew the decision-making process that their due process rights will be violated.  Accordingly, Defendants' joint motions to compel the testimony of Vargas-Sanchez (Docket Entry Nos. 238 and 255) are **DENIED**.

In light of this ruling, the court finds that no legitimate purpose remains for the continued detention of Vargas-Sanchez.  The court therefore **GRANTS** Vargas-Sanchez's motion for release as a material witness (Docket Entry No. 240).

It is further **ORDERED** that Vargas-Sanchez be returned to the custody of United States Immigration and Customs Enforcement ("ICE") for further processing based on his immigration status.

The removal of Vargas-Sanchez to ICE custody is **STAYED** for fourteen days to allow Defendants an opportunity to appeal this ruling to the district court.

**SIGNED** this 8th day of September, 2010.

Nancy K. Johnson
United States Magistrate Judge

11